IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | No. 3:12-CV-155 (CAR) |
| GEORGIA FARM BUREAU MUTUAL | : | |
| INSURANCE COMPANY and | : | |
| BETTY K. ENSLEN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

ORDER ON MOTION FOR PROTECTIVE ORDER AND MOTION FOR
PROTECTIVE ORDER OR, IN THE ALTERNATIVE, MOTION TO QUASH

This action is before the Court on Defendant Georgia Farm Bureau Mutual Insurance Company's Motion for Protective Order [Doc. 40-1] and Motion to Quash Plaintiff's Subpoena for Documents [Doc-41-1].[1]  For the following reasons, Defendant Georgia Farm Bureau's Motion for Protective Order is **GRANTED in part** and **DENIED in part,** and Motion to Quash Plaintiff's Subpoena for Documents is hereby **DENIED.**

---

[1] The Court construes Defendant's Motion for Protective Order or, In the Alternative, Motion to Quash Plaintiff's Subpoena for Documents [Doc-41-1] as a Motion to Quash.

1

## BACKGROUND

This case arises from the fire damage of Defendant Betty Enslen's home on December 11, 2010. Plaintiff, Bank of America, N.A., ("BANA") is named as the first and second mortgagee under Enslen's homeowner's insurance policy, held by Georgia Farm Bureau ("GFB"). GFB retained Swift, Currie, McGhee & Heirs, LLP ("Swift Currie") attorneys, Mark Dietrichs and Laura Murtha, on February 18, 2001, to assist in an arson investigation and related insurance claims.

BANA brings claims for breach of contract and bad faith against GFB, alleging that GFB's attorneys attempted to expedite payment to BANA outside of the terms of the insurance policy, while also requiring BANA to sign a "factually incorrect" release ("Release").[2] GFB argues that BANA's bad faith claim is unfounded and that BANA waived its right to recover under the insurance policy to the extent that BANA obtained recovery through its foreclosure on Enslen's property.

This action is currently before the Court on a discovery dispute surrounding BANA's claim of bad faith and Mr. Dietrichs' and Ms. Murtha's alleged involvement surrounding the disputed Release. BANA seeks to depose Ms. Murtha, former counsel

---

[2] Bank of America's Response to Motion for Protective Order, Doc. 47, at 2.

for GFB,[3] and Mr. Dietrichs, current counsel for GFB.  GFB filed a Motion for Protective Order and a Motion to Quash Plaintiff's Subpoena contending that the information BANA seeks in deposition is privileged and all other non-privileged information sought has already been disclosed.  The Court granted a hearing on the present Motions[4] and ordered BANA to submit a list of intended deposition questions.[5]  Thereafter, GFB filed its objections.[6]

## DISCUSSION

In resolving this discovery dispute, the Court has considered the parties' briefs and supporting materials, BANA's submitted questions, GFB's objections, and the parties' oral arguments.  BANA argues that GFB's request for a protective order should be denied because it failed to confer in good faith before involving this Court, as required under Federal Rule of Civil Procedure 26.[7]  GFB argues that the Court should issue a protective order or quash the subpoena because BANA failed to give proper

---

[3] Ms. Murtha withdrew her representation of Defendant on January 16, 2014 [Doc. 53] and is no longer employed by Swift, Currie, McGhee & Heirs, LLP.
[4] Although it rarely grants oral argument to a discovery dispute, the Court held a hearing on June 6, 2014 to discuss the parties' contentions regarding the Motions before the Court.  This dispute has become protracted and entrenched, with both sides asserting compelling interests.
[5] BANA's Submitted Questions, Doc. 87.
[6] GFB's Response and Specific Objections, Doc. 89.
[7] Fed. R. Civ. P. 26(c)(1) (asserts a duty to "confer or attempt to confer in good faith").

notice of its subpoena under Federal Rule of Civil Procedure 45(a)(4).[8] The Court finds both arguments fall short of being dispositive in the Court's consideration of the Motions. The Court recognizes that the discovery sought is the deposition of an attorney; therefore, this case calls attention to the discreet and delicate issues of attorney-client privilege, the work product doctrine, and the general needs of thorough discovery. In considering the present Motions, the Court has a duty to balance the interests of the parties.[9]

### A. Attorney Depositions

The Federal Rules of Civil Procedure provide that parties may obtain discovery by oral depositions "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "relevant information need not be admissible."[10] The district court may limit "the frequency or extent of the use of discovery methods otherwise permitted under [the federal] rules."[11] GFB requests that this Court prohibit

---

[8] Fed. R. Civ. P. 45(a)(4).
[9] *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).
[10] Fed. R. Civ. P. 26(b)(1).
[11] Fed. R. Civ. P. 26(b)(2). The court may limit discovery if "it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id*.

the deposition of Mr. Dietrichs and Ms. Murtha.  Depositions of opposing counsel are generally disfavored and permitted "only in limited circumstances."[12]  On the other hand, a "protective order which prohibits a deposition is rarely given" and nothing in the federal rules prohibits the deposition of opposing counsel. [13]  A lawyer's profession is not a talisman of privilege, automatically granting attorneys immunity from discovery under the federal rules.

Circuit courts are divided over the criteria to use in determining whether the deposition of an attorney is warranted.  GFB urges this Court to look to the test adopted by the Eighth Circuit in *Shelton v. American Motor Corp*.[14]  There, the court noted that "taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation, ... distracts from the quality of client representation...[and has a] chilling effect...on the truthful

---

[12] *Covington v. Walgreen Co.*, No. 1:11–CV–22900, 2012 WL 2120776, at *3 (S.D. Fla. 2012).
[13] *Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11–cv–1468–T–33TBM, WL 230241, at *2 (M.D. Fla. 2013) (citations omitted).  Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests.  *See, e.g.,* Fed. R. Civ. P. 30(a)(1) ("A party may take the testimony of any person . . . by deposition upon oral examination without leave of court.") (emphasis added); Fed. R. Civ. P. 26(c) (permitting courts to issue a protective order upon "good cause shown" by the party opposing discovery).
[14] 805 F.2d 1323, 1327 (8th Cir. 1986).

communications from the client to the attorney...."[15] Consequently, the Eighth Circuit held that parties seeking to depose "opposing counsel" must show that: "(1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.[16] In interpreting *Shelton*, courts have noted that the *Shelton* test only applies when "(1) [t]rial or litigation counsel are being deposed, and (2) when such questioning would expose litigation strategy on the pending case."[17]

In counterpoint to the "rigid *Shelton* rule," the Second Circuit looked to the standards of Rule 26 and set out a more "flexible approach" to evaluating lawyer depositions.[18] In this approach,

> the judicial officer supervising discovery takes into account consideration of all the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.... Under this approach, the fact the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically

---

[15] *Id.*
[16] *Id.* at 1327.
[17] See, e.g., *United States v. Phillip Morris, Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002).
[18] *Official Comm. Of Unsecured Creditors of Hechinger Inc. Co. of Del., Inc. v. Friedman*, 350 F.3d 65, 67, 72 (2nd Cir. 2003).

require prior resort to alternative discovery devices, but it is a circumstance to be considered.[19]

The Eleventh Circuit has not adopted either approach, and district courts throughout the Circuit have used both approaches, or a combination thereof, giving this Court no clear guidance on evaluating deposition of opposing counsel.[20] This Court declines to strictly apply either approach, and instead focuses its analysis on weighing and balancing BANA 's need for the information sought with GFB's interests in its attorney-client relationship. As explained below, the Court concludes that BANA has established a genuine need and good cause for the requested deposition.[21]

In weighing BANA's need for complete discovery and GFB's interests in its attorney-client relationship, the Court will allow BANA to depose Ms. Murtha, not Mr. Dietrichs. Because BANA's claims revolve around Ms. Murtha's and Mr. Dietrichs'

---

[19] *Id*. at 72.

[20] *See, e.g., Redfish Key Villas Condominium Assoc., Inc. v. Amerisure Ins. Co.*, 2014 WL 407960, (M.D. Fla. 2014) (applying *Shelton*); *Axiom,* 2013 WL 230241 (M.D. Fla. 2013) (applying *Shelton* and the additional factor that "the movant's needs outweigh the dangers of deposing the party's attorney"); *In re Douglas Asphalt Co.*, 436 B.R. 246, 250 (Bankr. S.D. Ga. 2010) ("The Law Firms must satisfy the *Shelton* test if they wish to depose Mills."); *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., Inc.*, No. 4:99-CV-311-WS, WL 34104929, at *1–2 (N.D. F la. 2001) (articulating and applying the *Shelton* test); *Floyd v. Suntrust Banks, Inc.*, 2011 WL 2604818 (N.D. Ga. 2011) (applying *Shelton*); *Bledsoe v. Remington Arms Co.*, No. 1:09-CV-69 -WLS, 2010 WL 147052 (M.D. Ga. 2010) (declined to apply *Shelton*); *Argo Systems FZE v. Liberty Ins. PTE, Ltd.*, No. Civ. A. 04-00321-CGB, 2005 WL 1355060, at *3 (S.D. Ala. 2005) (refusing to apply either *Shelton* or the Second Circuit test and focusing instead on the parties' "need" and the firm's "claims adjuster status").

[21] Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

"handling"[22] of the insurance claim, BANA cannot gather information surrounding the disputed release and bad faith claim by any other means.  Additionally, the Court finds that deposing Mr. Dietrichs would be cumulative and, due to his ongoing representation of GFB in this litigation, would unnecessarily cause prejudice and undue hardship to GFB.  GFB asserts that Ms. Murtha "was a party to every communication with BANA and all third parties" and can speak to "all relevant communications."[23] The Court is aware that BANA seeks information surrounding conversations that took place outside of Ms. Murtha's presence between Mr. Dietrichs and BANA employee Quwana Miller.  It appears, however, that information about this conversation can be accessed through other sources.[24]  The deposition of Ms. Murtha is not unbridled, however, and the limits of the deposition are outlined below.

### B. Attorney-Client Privilege

GFB argues many of BANA's submitted questions must be excluded under attorney-client privilege.  In a diversity action, issues of privileges are substantive and,

---

[22] Motion to Disqualify Counsel, Doc. 50 at 1.
[23] GFB's Response and Specific Objections, Doc. 89 at 7.
[24] Mr. Dietrichs told this Court in the June 6th hearing that his conversation with Quwana Miller was "probably a minute or two" [Doc. 77], and Quwana Miller herself can speak to this conversation.

thus, governed by state law.²⁵  Therefore, Georgia law determines whether attorney-client privilege attaches to the information sought by BANA.²⁶  In Georgia the "general rules on the attorney-client privilege provide that the privilege attaches where (1) there is an attorney-client relationship; (2) the communications in question relate to the matters on which legal advice was sought; (3) the communications have been maintained in confidence; and (4) no exceptions to privilege are applicable."²⁷

Georgia courts make clear that the privilege does not simply follow an attorney by virtue of her profession.²⁸  Moreover, the attorney-client privilege is to be narrowly construed²⁹ and "extends only to confidential communications <u>made for the purpose</u> of facilitating the rendition of <u>legal services</u> to the client."³⁰  Thus, the privilege does not apply where the attorney acts merely as a business adviser.  Furthermore, Georgia courts have noted that the privilege is never available to funnel a business's papers and documents into the hands of its lawyers for custodial purposes to avoid disclosure.³¹  Therefore, in Georgia it is "well settled that the requisite professional relationship is not

---

²⁵ *In re Fink*, 876 F.2d 84, 85 (11th Cir. 1989); *see also Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667, 670 (N.D. Ga. 2008); *Shipes v. BIC Corp.*, 154 F.R.D. 301, 304 (M.D. Ga. 1994).
²⁶ O.C.G.A. § 24-9-24; *Shipes,* 154 F.R.D. at 304.
²⁷ *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 423 (2013) (internal citations omitted).
²⁸ *S. Guar. Ins. Co. of Georgia v. Ash,* 192 Ga. App. 24, 28 (1989) (citations omitted).
²⁹ *Bryan v. State*, 282 Ga. 631 (2007).
³⁰ *Id.* (emphasis added).
³¹ *S. Guar. Ins. Co. of Georgia*, 192 Ga. App. at 28 (emphasis in original).

established when the client seeks <u>business or personal advice</u>, as opposed to legal assistance."[32] Moreover, the attorney-client privilege does not apply "to the extent a communication is made for the purpose of disclosure to a third party."[33]

In a similar vein, in evaluating when the privilege attaches to lawyers acting within the insurance context, district courts have held that "no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer."[34] However, those courts have also noted that simply because the attorney's assigned duties "were investigative in nature" does not preclude an assertion of the attorney-client privilege. Thus, "the relevant question is not whether [the attorney] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of <u>legal services</u>."[35]

In determining privilege, this Court must "consider the totality of the circumstances."[36] Here, in considering all the materials presented, and in particular GFB's 30(b)(6) witness's deposition, it appears Mr. Dietrichs and Ms. Murtha had an attorney-client relationship with GFB during the period surrounding the Release;

---

[32] *Id*. (emphasis in original).
[33] *McKesson HBOC, Inc. v. Adler*, 254 Ga. App. 500 (2002).
[34] *Cutrale Citrus Juices USA, Inc., v. Zurich American Ins. Grp*., No. 5:03–cv–420–Oc–10GRJ, 2004 WL 5215191 (M.D. Fla. 2004) (citations omitted).
[35] *Id*.
[36] *S. Guar. Ins. Co. of Georgia*, 192 Ga. App. at 28.

however, even to the extent that they had such a relationship, it does not appear that the information BANA seeks involves communications that were intended to be confidential or based in legal advice. GFB's 30(b)(6) witness states that GFB did not anticipate litigation with BANA and that GFB "directed [the attorneys] to go ahead" and deal directly with BANA.[37]  Additionally, many of the documents, such as the Release, check letters, and emails, were specifically prepared for review by a third party, i.e., BANA. Therefore, because the attorneys were instructed to take charge of the interactions with BANA, there seems to be little legal services or legal advice exchanged between GFB and the attorneys outside GFB's directive to "go ahead." To the extent, however, that any communications were intended to remain confidential between GFB and its attorneys and involved legal services—not ordinary business services—the attorney-client privilege applies. GFB, however, has presently failed to establish that the communications were intended to be confidential or anything other than business services.

Thus, the Court finds, BANA may question Ms. Murtha as to the interactions between the attorneys, BANA, and third parties. BANA may not ask about confidential communications regarding legal services and advice communicated between the

---

[37] Dep. of Tim Rolfe, 30(b)(6) Witness, Doc. 52-2 at 96.

attorneys and GFB.  The Court specifically finds that Questions 13 and 55 fall under attorney-client privilege and are not to be asked of Ms. Murtha.  Question number 91 potentially raises attorney-client privilege and should be rewritten to avoid solicitation of privileged communications between GFB and its attorneys.  In regard to the remaining questions on which GFB has claimed attorney-client privilege, the Court fails to see how the privilege applies.  The burden rests on the party seeking to maintain the privilege.[38]  Therefore, if GFB continues to assert attorney-client privilege, it must present a privilege log with specific reasons for claiming the privilege for the Court's *in camera* review.

### C. Work Product Doctrine

GFB also claims many of BANA's submitted questions are barred by the work product doctrine. Unlike attorney-client privilege, the scope of protection provided by the work product doctrine is a procedural question and thus governed by federal law in a diversity action.[39] Work product is protected under Federal Rule of Civil Procedure 26(b)(3).

Rule 26 states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for

---

[38] *Abdallah v. Coca-Cola Co.*, No. CIV A1:98-CV-3679-RWS, 2000 WL 33249254 (N.D. Ga. 2000).
[39] *Camacho*, 287 F.R.D. at 691.

another party or its representative…."[40]  Even if information is classified as work product, it may still be discovered if it is otherwise discoverable under the rules, and the party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[41] Accordingly, Rule 26 protects work prepared in anticipation of litigation by an attorney and that is discoverable only upon a showing of need and hardship.  Secondly, it protects "opinion" work product, which "encompasses the mental impressions, conclusions, opinion[s], or legal theories of an attorney or other representative of a party concerning the litigation."[42]

As a general rule, documents created in the ordinary course of business—even if litigation is already on the horizon—are not protected as work product.  By its nature, the insurance business challenges the definition of work product "because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation."[43]  On the other hand, when the insurance company is primarily concerned with "deciding whether to resist the claim, to reimburse the insured and seek subrogation…or to reimburse the insured and forget about the claim thereafter," it is

---

[40] Fed. R. Civ. P. 26(b)(3).
[41] *Id*.
[42] *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 697 (N.D. Ga. 2007) (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)).
[43] *Carver*, 94 F.R.D. at 134.

not engaged in work product.[44] Like attorney-client privilege, the burden of establishing work product is on the party who asserts the doctrine.[45]

Again, GFB's 30(b)(6) witness has made clear that GFB was not in anticipation of litigation with BANA, nor did they have a "dispute" with BANA at the time they sought the Release.[46] Therefore, because there was no anticipation of litigation and GFB was using the attorneys to expedite their business with BANA, the information BANA seeks in not protected by work product doctrine. Although GFB anticipated litigation with Enslen during this time, GFB has failed to demonstrate how anticipating litigation with Enslen makes the requested documents work product as to BANA. It is GFB's burden to demonstrate that the requested discovery is work product. Considering GFB's objections submitted to the Court, it is unclear, for example, how a "standard form" or "exemplar" or conversations and notes with a third party constitute work product.[47] Moreover, work product "must be specifically raised and demonstrated rather than asserted in blanket fashion."[48]

---

[44] *Underwriters*, 248 F.R.D. at 667 (quoting *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D. Ga. 1982)); *see also Camacho*, 287 F.R.D. at 694.
[45] *Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006).
[46] Dep. of Tim Rolfe, 30(b)(6) Witness, Doc. 52-2 at 95, 96.
[47] BANA's Submitted Questions, Doc. 87 at 2, 3, 7.
[48] *Carnes*, 244 F.R.D. at 698.

Furthermore, the Court has found that BANA has established the requisite substantial need for this discovery, and it is clear given this protracted discovery dispute that BANA cannot attain this information from "other means."  Therefore, after reviewing BANA's questions, the Court finds that the objections based on work product are unfounded.  The Court notes, however, that where GFB has affirmed that it has produced all the documents and notes in its possession, BANA must <u>not</u> reassert these requests.

**D.  Asked and Answered**

In its extensive objections to BANA's submitted questions, GFB asserted that many of the questions were asked and answered.  The Court agrees with GFB that various questions have been asked and answered.  Therefore, the Court finds it proper to limit the scope of this deposition to questions that have not already been asked and answered by GFB.  The following questions shall <u>not</u> be asked again by BANA: 2, 3, 4, 7, 26, 29, 36, 37, 44, 48, 49, 52, 55, 69(d), 69(g), 73(g), 74(e), 74(f), 74(g), 74(h), 74(j), 76(d), 76(e), 76(g).

## CONCLUSION

For the foregoing reasons, the Court HEREBY ORDERS GFB's Motion for Protective Order [Doc. 40-1] is **GRANTED in part**, and **DENIED in part**.  The Motion is **GRANTED** as to Mr. Dietrichs and **DENIED** as to Ms. Murtha.  GFB's Motion to Quash

Plaintiff's Subpoena for Documents [Doc. 41-1] is hereby **DENIED.** The Court further orders that Ms. Murtha's deposition be limited to the questions submitted to the Court[49] and in accord with the limitations outlined in this Order.  The Court orders that discovery shall be reopened for 30 days, and that Ms. Murtha's deposition must be held in the Middle District Courthouse in Macon, GA.  Finally, if the parties wish to seek attorneys' fees at this time, they must file a separate motion with the appropriate affidavits and evidence showing the requested amounts are reasonable.

Based on these rulings, the Court hereby finds Defendant's Motion for Summary Judgment [Doc. 60] and Motion to Strike [Doc. 73] are **MOOT**. Therefore, these Motions [Doc. 60 and Doc. 73] are hereby **DISMISSED** without prejudice.  If warranted, the Defendant may refile these Motions after discovery has closed.

**SO ORDERED,** this 29th day of September, 2014.

S/ C. Ashley Royal  
C. ASHLEY ROYAL, CHIEF JUDGE  
UNITED STATES DISTRICT COURT

JRF/ssh

---

[49] Doc. 86.